GILMAN, J., delivered the opinion of the court, in which COLE, J., joined. KENNEDY, J. (pp. 457-60), delivered a separate opinion concurring in part and dissenting in part.
OPINION
RONALD LEE GILMAN, Circuit Judge.
LTV Steel Company, Inc. filed for Chapter 11 bankruptcy protection in 2000. The United States Trustee for the Northern District of Ohio appointed the Official Committee of Administrative Claimants (ACC) to represent the interests of those creditors holding administrative claims. A Standing Order was entered by the bankruptcy court granting the ACC authority to bring a lawsuit against certain officers and directors of LTV Steel, including the appellants in this case. In response, all of the appellants other than Moran filed a motion in the bankruptcy court seeking dissolution of the ACC. The bankruptcy court denied their motion. Moran pursued a more direct approach by appealing the Standing Order to the district court. The district court ruled against Moran. It also ruled against the other appellants who had appealed the denial of their motion to dissolve the ACC. Following the district court’s dismissal of their respective appeals, the appellants now seek review in this court. For the reasons set forth be *451 low, we AFFIRM the judgment of the district court.
I. BACKGROUND
When the LTV Steel bankruptcy estate became administratively insolvent, the United States Trustee appointed the ACC, which investigated the conduct of LTV Steel’s officers and directors to determine whether there were any causes of action that should be pursued against them. The ACC concluded, among other things, that colorable claims existed against certain officers and directors for failing to halt the operations of LTV Steel sooner than they did. Because the estate declined to bring claims against the officers and directors, the ACC sought authority from the bankruptcy court to bring the lawsuits derivatively.
A. The Standing Order
In September 2005, the bankruptcy court issued a Standing Order authorizing the ACC to pursue litigation against various officers and directors of LTV Steel, including the six appellants in this ease: Glenn J. Moran, William H. Bricker, Dennis Babcock, James Baske, Eric Evans, and George Henning. The Standing Order analyzed the ACC’s proposed complaint and concluded that it contained col-orable claims that, if successful, would benefit the estate. In re LTV Steel Co., Inc., 333 B.R. 397 (Bankr.N.D.Ohio 2005); see also Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.), 66 F.3d 1436, 1446 (6th Cir.1995) (setting forth the requirements that a creditor must meet in order to file a derivative suit on behalf of a Chapter 11 bankruptcy estate). Less than two weeks after the issuance of the Standing Order, the ACC filed its lawsuit in the district court against the officers and directors.
Moran, a former CEO of LTV Steel, appealed the Standing Order to the district court. There, the ACC moved to dismiss Moran’s appeal for lack of jurisdiction. The district court dismissed the appeal on two independent grounds — lack of finality and lack of standing. It first analyzed the appealability of the Standing Order under the finality rule of 28 U.S.C. § 158(a), which grants jurisdiction to the district courts “from final judgments, orders and decrees” of the bankruptcy courts and, “with leave of the court, from other interlocutory orders and decrees.” The district court concluded that the Standing Order was not an appealable final order because “no discrete dispute has been decided” and the Order “only authorizes the ACC to pursue claims on behalf of LTV.” Moran v. Official Comm. of Admin. Claimants, No. 1:05CV2285, 2006 WL 3253128 at *2 (N.D.Ohio Nov.8, 2006). Nor did the court accept Moran’s alternative argument that the Standing Order fits within the narrow exception to the finality requirement for “collateral orders.” Id. at *3; see also Henry v. City of Detroit Manpower Dept., 763 F.2d 757, 760 (6th Cir.1985) (noting that an order is considered “collateral,” and thus final for appellate purposes, where it “conclusively determine^] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal from a final judgment.” (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978))).
Finally, the district court held that Moran lacked standing because he is not a “person aggrieved” by the Standing Order. Moran, 2006 WL 3253128 at *5 (concluding that a defendant is not a “person aggrieved” simply by virtue of being sued); see also Marlow v. Rollins Cotton Co. (In re Julien Co.), 146 F.3d 420, 423 (6th Cir.1998) (describing the “person ag *452 grieved” standing requirement in bankruptcy appeals). Moran now argues that the district court erred in not reaching the merits of his challenge to the Standing Order.
B. The motion to dissolve the ACC
The remaining five appellants were among a group of defendants named in the ACC’s lawsuit who filed a motion in February 2006 to dissolve the ACC, arguing that it was formed without statutory authority. Their motion was denied by the bankruptcy court in a ruling from the bench that was memorialized in a written order issued in May 2006. Bricker, Bab-cock, Baske, Evans, and Henning appealed the denial of their motion to the district court. That court refused to hear Brick-er’s appeal because it held that Bricker had appealed only the oral ruling of the bankruptcy court, and that the oral ruling was not an appealable final order. Bricker v. Official Comm. of Admin. Claimants, No. 1:06CV 1082, 2007 WL 963290 at *4 (N.D.Ohio Mar.28, 2007). In a separate opinion, the district court held that Bab-cock, Baske, Evans, and Henning were not “persons aggrieved” by the bankruptcy court’s order, and that they therefore lacked standing to appeal. Babcock v. Official Comm. of Admin. Claimants, No. 1:06CV1081, 1:06CV1503, 2007 WL 950336 at *2-4 (N.D.Ohio Mar.27, 2007). These five appellants now assert that the district court erred when it declined to hear their appeals on the merits.
II. ANALYSIS
A. Standard of review
In cases heard originally in the district court, we will not set aside its factual findings unless they are clearly erroneous. United States v. Green, 532 F.3d 538, 552 (6th Cir.2008). The rule in bankruptcy cases is similar, except that where the district court has reviewed factual findings initially made by the bankruptcy court, this court looks directly at the bankruptcy court’s factual findings. Investors Credit Corp. v. Batie (In re Batie), 995 F.2d 85, 88 (6th Cir.1993). All legal conclusions are reviewed de novo. Id. at 88-89.
This court has previously stated that “[wjhether an appellant is a person aggrieved is a question of fact....” Fid. Bank, Nat’l Ass’n v. M.M. Group, Inc., 77 F.3d 880, 882 (6th Cir.1996). But the factors that comprise the “person aggrieved” doctrine are determined as a matter of law. See Marlow, 146 F.3d at 423 (describing the legal contours of the “person aggrieved” doctrine). “[I]f a question is a mixed question of law and fact, then we must break it down into its constituent parts and apply the appropriate standard of review for each part.” Batie, 995 F.2d at 88. And to the extent that the facts are undisputed, the standing question is purely a legal one that we will review de novo. See, e.g., Kopp v. Clark (In re Kopexa Realty Venture Co.), 240 B.R. 63, 65 (B.A.P. 10th Cir.1999).
B. Moran’s appeal of the Standing Order
We begin with Moran’s argument that the district court erred in its determination that he lacks standing to appeal the bankruptcy court’s Standing Order. Under the “person aggrieved” doctrine, a party does not have standing to appeal a bankruptcy court order unless that party is “directly and adversely affected pecuniarily by the order.” Marlow, 146 F.3d at 423. Parties may not appeal a bankruptcy order unless they have a direct financial stake in the order such that it “diminishes [their] property, increases [their] burdens, or impairs [their] rights.” Fid. Bank, 77 F.3d at 882. This standing *453 requirement is “more limited than Article III standing or the prudential requirements associated therewith.” Harker v. Troutman (In re Troutman Enter., Inc.), 286 F.3d 359, 364 (6th Cir.2002) (citing In re PWS Holding Corp., 228 F.3d 224, 248 (3d Cir.2000)).
We are not persuaded that Moran is a “person aggrieved” by the Standing Order. Although that order paved the way for the ACC to sue him, we are aware of no court that has held that the burden of defending a lawsuit, however onerous or unpleasant, is the sort of direct and immediate harm that makes a party “aggrieved” so as to confer standing in a bankruptcy appeal. See Fid. Bank, 77 F.3d at 883 (being “subjected] to the possibility of future litigation” by a bankruptcy court order is “insufficient to confer standing”); see also Travelers Ins. Co. v. H.K. Porter Co., Inc., 45 F.3d 737, 743 (3d Cir.1995) (“[A]n order which simply allows a lawsuit to go forward does not necessarily “aggrieve” the potential defendant for purposes of appellate standing.”); In re El San Juan Hotel, 809 F.2d 151, 155 (1st Cir.1987) (holding that an appellant “whose only interest is as a party defendant ... has no standing” because the order in question “has no direct and immediate impact on appellant’s pecuniary interests.” (citation and internal quotation marks omitted)); Travelers Cas. & Sur. v. Corbin (In re First Cincinnati, Inc.), 286 B.R. 49, 53 (B.A.P. 6th Cir.2002) (“[M]ost, if not all, of the courts that have considered this question have held that a bankruptcy court’s order does not produce the direct and adverse pecuniary impact necessary to bestow standing on an appellant if the order’s effect on the appellant is merely to expose it to the risks of litigation.”).
This key point is clarified by the dissenting opinion in Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.), 555 F.3d 231 (6th Cir.2009), where Hyundai sought to sue several creditors of the Trailer Source estate (the JT & T parties) to recover alleged fraudulent transfers of estate assets. Id. at 233-34. The bankruptcy court analyzed the Gibson Group factors and denied Hyundai’s request, but Hyundai appealed and the district court reversed. Id. at 234-35. In response, the JT & T parties— adversary defendants in the newly authorized lawsuit by Hyundai — appealed to this court. Id. at 235. Hyundai argued on appeal that the JT & T parties did not have standing under the “person aggrieved” doctrine to challenge the district court’s grant to Hyundai of the right to bring suit. Id. The majority held that “the bankruptcy appellate-standing doctrine is not applicable to the second layer of appeal, from the district court to the court of appeals, when it is uneontested that the party who appealed the bankruptcy court’s order to the district court had appellate standing.” Id. at 237.
Judge Rogers dissented on this point, opining that the rationale behind the “person aggrieved” doctrine — “prevent[ing] indirectly affected parties from stalling bankruptcy proceedings” — is “implicated in the context of an appeal from a district court to a court of appeals as much as in an appeal from a bankruptcy court to a district court.” Id. at 247 (Rogers, J., dissenting). He accordingly proceeded to analyze whether the JT & T parties were “persons aggrieved” “in their capacity as defendants to future litigation” and concluded that they were not. Id.
Because the ACC’s right to sue the defendants in the present case was granted by the bankruptcy court in the first instance, the Trailer Source majority’s holding regarding the inapplicability of the “person aggrieved” doctrine to the “second layer of appeal” is not relevant here. This *454 caused the majority to state that it had no need to address Judge Rogers’s “detailed arguments as to why ... the JT & T parties lack[ed] appellate standing,” id. at 238 n. 4 (majority opinion), but we find his thoughtful analysis of the standing issue persuasive in regard to the case before us.
We agree with Judge Rogers’s observation that “parties are not aggrieved by an order granting a creditor derivative standing when their interest in the order is as party defendants in the resulting adversary proceeding ... because the interest that [such parties] assert as defendants to an adversary proceeding is not protected by the Bankruptcy Code.” Id. at 247 (Rogers, J., dissenting) (citations omitted). Moran, like the JT & T parties in Trailer Source, is interested in “avoiding liability to the estate.” Id. at 248. This interest “is diametrically opposed to the primary goal of ... the Bankruptcy Code in general, which ‘is to minimize the injury to creditors.’ ” Id. (citing In re Harwald Co., 497 F.2d 443, 444 (7th Cir.1974)).
Moran argues in the alternative that even if one could reasonably conclude that the bare threat of litigation is insufficient to confer standing, the fact that here a lawsuit has already been filed should be enough to give him “person aggrieved” standing. He contends that any lawsuit against the appellants in Fidelity Bank, Nat’l Ass’n v. M.M. Group, Inc., 77 F.3d 880 (6th Cir.1996), was “remote and consequential rather than direct and immediate.” Id. at 883. We find this to be a distinction without a difference. Central to Fidelity Bank’s reasoning was the observation that the order at issue “d[id] not impair appellants’ ability to defend themselves in future suits. Those defenses that would have been available to them ... will still be available in future suits.” Id. We do not believe that the actual filing of the lawsuit, as opposed to the bare threat of one, alters the applicability of this rationale. Therefore, as in the case of the JT & T adversary defendants, “it is irrelevant that it is no longer uncertain whether” Moran “will be sued by the estate.” Trailer Source, 555 F.3d at 248 (Rogers, J., dissenting). The Standing Order’s authorization of a suit against Moran did not directly “diminish [his] property, increase [his] burdens, or detrimentally affect [his] rights,” and he therefore does not have standing to appeal the order. See, e.g., San Juan Hotel, 809 F.2d at 155 (citing In re Fondiller, 707 F.2d 441, 443 (9th Cir.1983)).
Moran next argues that his status as an administrative claimant makes him a “person aggrieved” by the Standing Order. But Moran’s only claim on estate funds results from the fact that, pursuant to a bylaws indemnity provision, his expenses in defending against the ACC’s lawsuit are being paid by the estate. He insists that this administrative claim creates in him an interest equal to that of the other creditors — the members of the ACC — in seeing that the estate’s assets are distributed appropriately and without waste. See Kane v. Johns-Manville Corp., 843 F.2d 636, 642 (2d Cir.1988) (“As a general rule, creditors have standing to appeal orders of the bankruptcy court disposing of property of the estate because such orders directly affect the creditors’ ability to receive payment of their claims.”). But simply holding a claim of any type against the estate does not automatically confer appellate standing under the “person aggrieved” doctrine. Trailer Source, 555 F.3d at 250 (Rogers, J., dissenting) (collecting cases that make this point). Rather, “[t]o have standing to appeal,” Moran “must demonstrate he has a direct and adverse pecuniary interest in each order he challenges.” Lopez v. Behles (In re Am. Ready Mix, Inc.), 14 F.3d 1497, 1500 (10th Cir.1994).
*455 The argument that Moran “ha[s] an interest in ensuring the maximization of estate assets is clearly disingenuous as asserted here.” See Trailer Source, 555 F.3d at 251-52 (Rogers, J., dissenting) (“It is obvious from the adverse interests of the [named defendants] and the estate that [the named defendants] are not appealing as creditors of the estate, but as defendants to an adversary proceeding brought for the estate”). Moran’s status as an administrative claimant is solely dependant on the existence of the Standing Order that he now seeks to challenge. Were the Standing Order to be reversed, the lawsuit against him would be dismissed and his claim against the estate would disappear.
The only burden that Moran bears under the Standing Order — the possibility that he may not receive a full recovery of his administrative claim for litigation expenses — flows directly from his status as a defendant. This is nothing more than an indirect way of arguing that his status as a defendant in a lawsuit is sufficient to confer “person aggrieved” standing. But as we have explained, being sued is not sufficient to make him a “person aggrieved” for bankruptcy purposes. See Fid. Bank, 77 F.3d at 883. No case to our knowledge has held that an administrative claim of this nature gives a litigant such as Moran the standing to appeal.
The rationale for this result becomes even clearer upon consideration of the plight of a hypothetical group of defendants similarly situated to Moran in all but one respect — the absence of any indemnification for defense costs and damage awards against them. Such defendants would not be considered “persons aggrieved” by a bankruptcy court order allowing them to be sued. See, e.g., id. We decline to accept the perverse logic that Moran should be allowed to appeal the Standing Order while defendants without any indemnification — who would clearly be burdened to a greater extent than Moran because they would have to pay all defense costs and any awards against them from their own pockets — could not.
Moran’s final argument is that if he does not have standing to appeal the Standing Order, then there is no one left to challenge the soundness of the bankruptcy court’s decision. He focuses on the fact that, in order to authorize the ACC to derivatively pursue the estate’s claims against him, the bankruptcy court was required to weigh the costs of pursuing the case against the potential benefits to the estate if the ACC succeeds. See Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.), 66 F.3d 1436, 1446 (6th Cir.1995). According to Moran, the bankruptcy court failed to consider all of the relevant evidence in its costs-versus-benefits analysis, and ultimately reached the wrong conclusion after only perfunctory consideration. If Moran is correct and the bankruptcy court erred in this part of its analysis, the ACC’s lawsuit against him and the other officers and directors would not serve the best interests of the estate.
Moran is mistaken, however, in arguing that only he can challenge the Standing Order on appeal. If the bankruptcy court’s Gibson Group analysis was faulty, the appropriate parties to seek review of that analysis are those creditors of LTV Steel whose recoveries would be diminished should the ACC’s lawsuit fail, ultimately decreasing the estate’s value. Moran, whose only claim against the estate results from his status as a defendant in the lawsuit authorized by the Standing Order, is not among this group. The other creditors’ interests align with those of the estate, because the size of their recovery depends on the potential value of the ACC’s lawsuit. But all of the remaining *456 creditors in this case are part of the ACC and have chosen to vigorously pursue the lawsuit against the officers and directors. Presumably they would not have done so if they did not believe that their actions will increase the net value of the estate. In a case where the creditors disagree about the prudence of pursuing a particular claim, those among them who object to the bankruptcy court’s Gibson Group analysis would have standing to appeal the resulting order. Because no creditor in this case has objected to the Standing Order, however, that issue is not before us here.
C. Appeal from denial of the motion to dissolve the ACC
We now turn to the arguments of the remaining appellants, all of whom appeal the denial of their motion to dissolve the ACC. The district court disposed of Brick-er’s appeal based on a perceived technical problem and declared that the remaining appellants did not have standing to appeal from the denial of their motion.

1. Babcock, Baske, Evans, and Hen-ning

These appellants argue that the district court erred in dismissing their appeal for lack of standing. For the same reasons set forth above in relation to Moran’s appeal of the Standing Order, however, they are not “persons aggrieved” and do not have standing to appeal the order dismissing their motion to dissolve the ACC. This result is even more obvious here than in Moran’s case because, even if these appellants’ status as defendants in the ACC’s lawsuit were sufficient to confer standing upon them, that status did not flow “directly” from the order denying their motion to dissolve the ACC. See Marlow, 146 F.3d at 423. Their status as defendants instead resulted from the Standing Order that authorized the lawsuit, an order that they did not appeal.

2. Bricker

This leaves us with the separate appeal by Bricker. According to the district court, Bricker’s appeal was premature because he filed his notice after the date of the bankruptcy court’s oral ruling but before the corresponding written order was entered. Bricker now asserts that his notice of appeal was saved by the operation of Rule 8002(a) of the Federal Rules of Bankruptcy Procedure, which states that “[a] notice of appeal filed after the announcement of a decision or order but before entry of the judgment, order, or decree shall be treated as filed after such entry and on the day thereof.” We note that even the United States Trustee concedes that Rule 8002(a) controls and that Bricker’s appeal to the district court was therefore timely filed. Both the Trustee and the ACC, however, argue that Brick-er’s appeal should suffer the same fate as that of the other appellants because, like them, he is not a “person aggrieved” and does not have standing to pursue the appeal.
The district court did not consider whether Bricker is a “person aggrieved.” Despite that, we may appropriately consider this issue because all of the relevant facts and evidence are before us. See Fid. Bank, 77 F.3d at 882 (considering whether appellants were “persons aggrieved” on the basis of the record on appeal). Because Bricker’s situation is identical to that of the Babcock group of appellants, he lacks standing to appeal the district court’s order for the same reasons articulated above relating to both that group of appellants and to Moran. We therefore affirm the district court’s dismissal of Bricker’s appeal.
*457 III. CONCLUSION
For all of the reasons set forth above, we AFFIRM the judgment of the district court.