# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2060

_____

Opportunity Finance, LLC; Opportunity Finance Securitization, LLC; Opportunity Finance Securitization II, LLC; Opportunity Finance Securitization III, LLC; International Investment Opportunities, LLC; Sabes Family Foundation; Sabes Minnesota Limited Partnership; Robert W. Sabes; Janet F. Sabes; Jon R. Sabes; Steven Sabes

*Appellant*s

v.

Douglas A. Kelley, Chapter 11 Trustee; Unsecured Creditors Committee

*Appellee*s

_____

No. 15-2061

_____

DZ Bank AG Deutsche Zentral-Genossenschaftsbank, Frankfurt am Main

*Appellant*

v.

Douglas A. Kelley; Unsecured Creditors Committee

*Appellee*s

_____

No. 15-2062
_____

Epsilon Global Active Value Fund 1-B Ltd.; Epsilon Global Active Value Fund II,
L.P.; Epsilon Global Active Value Fund II-B, L.P.; Epsilon Global Active Value
Fund II-B, Ltd.; Epsilon Global Active Value Fund III Ltd.; Epsilon Global Active
Value Fund Ltd.; Epsilon Global Active Value Fund, L.P.; Epsilon Global Asset
Management Ltd.; Epsilon Global Master Fund II, L.P., also known as Epsilon
Global Master Fund II, L.P., Sub 1; Epsilon Global Master Fund, L.P.; Epsilon
Structured Strategies Master Fund, L.P., also known as Epsilon Global Master
Fund III Structured Strategies, L.P.; Epsilon Investment Management, LLC;
Stafford Town Ltd.; Westford Asset Management, LLC; Westford Global Asset
Management Ltd.; Westford Special Situations Fund Ltd.; Westford Special
Situations Fund, L.P.; Westford Special Situations Master Fund, L.P.; Steve G. Stevanovich

*Appellant*s

v.

Douglas A. Kelley; Unsecured Creditors Committee

*Appellee*s
_____

Appeals from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: November 19, 2015
Filed: May 16, 2016
_____

Before SMITH, BYE, and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

In the aftermath of Thomas Petters' Ponzi scheme, Douglas A. Kelley—as trustee for Petters Company, Inc. (PCI) and eight associated special-purpose entities (SPEs)—filed Chapter 11 bankruptcy petitions. On Kelley's motion, the bankruptcy court consolidated the bankruptcy estates of PCI and the SPEs "for all purposes substantive and administrative." Lenders to PCI and the SPEs appealed. The district court[1] dismissed, holding the Lenders did not have standing to appeal the consolidation order because they were not "persons aggrieved." *Westlb AG v. Kelley*, 531 B.R. 783, 795 (D. Minn. 2015). The Lenders appeal. Having jurisdiction under 28 U.S.C. § 158(d)(1), this court affirms.

I.

Petters, convicted of wire fraud, mail fraud, conspiracy and money laundering, conducted a multi-billion-dollar Ponzi scheme using PCI and eight wholly-owned SPEs. *See United States v. Petters*, 663 F.3d 375, 378 (8th Cir. 2011). PCI and the SPEs were placed into receivership. The receiver filed Chapter 11 bankruptcy petitions for PCI and the SPEs. Kelley was appointed as the Chapter 11 trustee in each bankruptcy case, which the bankruptcy court consolidated into one jointly-administered case.

To fund PCI, Petters used various SPEs, which held illusory accounts receivable and had no appreciable assets entering bankruptcy. PCI also served as a holding company for several of the SPEs. Two groups of Lenders made loans to certain SPEs. Another group of Lenders did not make loans directly to the SPEs, but only to other Lenders. Each Lender was a net winner from the Ponzi scheme.

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

As net winners, none of the Lenders filed a proof of claim. Kelley, however, named the Lenders as defendants in separate avoidance actions. Seeking to recover funds for the bankruptcy estates, Kelley alleges that the SPEs wrongfully transferred funds to the Lenders. If the Lenders were found liable in the avoidance actions, they could then file proofs of claim in the bankruptcy case.

Kelley—with the support of the Committee of Unsecured Creditors—moved to substantively consolidate PCI and the SPEs. *See generally **Sampsell v. Imperial Paper & Color Corp.***, 313 U.S. 215, 219 (1941) (recognizing bankruptcy referee's power "consolidating the estates" of two related entities); ***In re Giller***, 962 F.2d 796, 799 (8th Cir. 1992) (recognizing "the bankruptcy court's power to order substantive consolidation"). The Lenders, along with nonparty Elistone Fund, objected to the consolidation. Kelley moved to strike their objections, asserting they were not parties in interest. The motion to strike was denied by the bankruptcy court. Granting the consolidation motion and consolidating the assets and liabilities of PCI and the SPEs in the main bankruptcy case, the bankruptcy court found that PCI and the SPEs were interrelated, and had engaged in "massive commingling and the erosion of corporate boundaries."

The Lenders and Elistone Fund appealed the consolidation. Kelley first moved to certify those appeals directly to this court, which was denied. Kelley then moved to dismiss the appeals, arguing that the Lenders did not have standing as "persons aggrieved" to appeal the bankruptcy court's order. The Lenders responded that (1) Kelley was estopped from objecting to their standing because he expressly stated in his certification motion that the district court had jurisdiction to hear the appeals and (2) nevertheless, they were persons aggrieved.

The district court dismissed the appeals, holding Kelley was not estopped, and that the Lenders were not "persons aggrieved." The Lenders appeal.

-4-

II.

The Lenders argue Kelley should be estopped from asserting they lacked standing to appeal. The Lenders note that, in the certification motion, Kelley said that the district court had "jurisdiction over . . . the pending appeal pursuant to 28 U.S.C. §§ 158(a) and 1331 and Federal Rule of Bankruptcy Procedure 8001(f)(3)(C)." Thus, according to the Lenders, Kelley should be estopped from invoking the "persons aggrieved" doctrine (which Kelley contends is jurisdictional).

The district court declined to estop Kelley from arguing that the Lenders were not persons aggrieved. This court reviews an application of the judicial estoppel doctrine for an abuse of discretion. *Van Horn v. Martin*, No. 15-1710, 2016 WL537592, at *1 (8th Cir. Feb. 11, 2016). This court "will not overturn a district court's discretionary application of the judicial estoppel doctrine unless it plainly appears that the court committed a clear error of judgment in the conclusion it reached upon a weighing of the proper factors." *Stallings v. Hussman Corp.*, 447 F.3d 1041, 1046-47 (8th Cir. 2006)

Judicial estoppel, an equitable doctrine, "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). This doctrine "protects the integrity of the judicial process." *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 679 (8th Cir. 2012). The Supreme Court has articulated three non-exhaustive factors to aid a court in determining whether to apply the doctrine: (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that the court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the party if not estopped. *Jones v. Bob Evans Farms, Inc.*, No. 15-2068, 2016 WL 308659, at *2 (8th Cir. Jan. 26, 2016), *citing New*

*Hampshire*, 532 U.S. at 749-51. "Notably, judicial estoppel does not apply when a debtor's prior position was taken because of a good-faith mistake rather than as part of a scheme to mislead the court." *Stallings*, 447 F.3d at 1049.

The district court did not abuse its discretion in declining to estop Kelley's arguments. First, Kelley's statement that the district court had jurisdiction under 28 U.S.C. §§ 158(a) and 1334 is not clearly inconsistent with his later position that the Lenders are not parties aggrieved. The cited statutes address the finality of bankruptcy court judgments, orders, and decrees. There is nothing clearly inconsistent with arguing that, based on the finality of the bankruptcy court's order, the district court has jurisdiction over the appeal, and later arguing, because the Lenders did not have standing to appeal, that the appeal should be dismissed. *See Simon v. Safelite Glass Corp.*, 128 F.3d 68, 73 (2d Cir. 1997) ("If the statements can be reconciled there is no occasion to apply an estoppel.").

As to the second *New Hampshire* factor, the Lenders claim that the district court accepted Kelley's earlier position by agreeing in its denial of the certification motion that it "has jurisdiction over the appeals under 28 U.S.C. § 158(a)." Section 158(a) governs the finality of a bankruptcy court order, not standing. There was nothing clearly inconsistent with the court noting the finality of the bankruptcy court order. More importantly, this factor aims to avoid "the perception that either the first or the second court was misled." *New Hampshire*, 532 U.S. at 750. Here, the same court presided over both stages of the proceedings and showed no concern that Kelley was "playing fast and loose with the courts." *See CRST Van Expedited*, 679 F.3d at 679.

Under the final *New Hampshire* factor, the Lenders argue that Kelley's inconsistent statements prejudiced them because they (1) expended money briefing the certification motion and (2) had to respond to Kelley's standing arguments in their reply brief rather than their opening brief. Each contention is without merit. As the district court correctly noted, at the time of the certification motion, an additional appellant that has since settled—Elistone Financial—had standing to appeal as a net

loser in the scheme. While still in bankruptcy court, Kelley moved to strike the Lenders' objections on the basis that they were not parties in interest and lacked prudential standing to object. Thus, the Lenders have not demonstrated that they suffered an unfair detriment or that Kelley gained an unfair advantage by his statement.

The district court did not abuse its discretion in declining to estop Kelley from asserting that the Lenders are not persons aggrieved.

III.

The Lenders argue that, even if Kelley is not estopped, the persons aggrieved doctrine invalidly restricts their ability to appeal bankruptcy court orders. According to the Lenders, this court should "reconsider" the doctrine because it is no longer valid after the 1978 amendments removed explicit references to the doctrine in the Bankruptcy Code.

The Lenders concede that this court has long applied the persons aggrieved doctrine. This court even stated that the original foundation of the doctrine has been repealed. *See* **In re O&S Trucking, Inc.**, No. 15-2048, 2016 WL 279269, at \*2 (8th Cir. Jan. 22, 2016) ("Although the modern Bankruptcy Code does not articulate a standard for appellate standing, our circuit consistently has applied a 'person aggrieved' standard derived from the Bankruptcy Act of 1898."); **In re AFY**, 734 F.3d 810, 819 n.10 (8th Cir. 2013) ("The 'persons aggrieved' standard is '[d]erived from the now-repealed Bankruptcy Act of 1898.'"). Having held that the persons aggrieved doctrine survives the 1978 amendments to the Bankruptcy Code, this court declines to reconsider the doctrine. *See* **Cnty. of Charles Mix v. U.S. Dep't of Interior**, 674 F.3d 898, 902 (8th Cir. 2012) (noting that a panel of this court cannot overturn the decision of a previous panel). *See generally* **In re Westwood Cmty. Two Ass'n, Inc.**, 293 F.3d 1332, 1334 (11th Cir. 2002) (collecting decisions of First, Second, Third,

Sixth, Seventh, Ninth and Tenth Circuits applying the persons aggrieved doctrine after the 1978 amendments).

## IV.

The Lenders argue that, even if the persons aggrieved doctrine is valid, they satisfy its requirements as persons aggrieved. This court reviews de novo a district court's determination whether a plaintiff has standing. *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 790 (8th Cir. 2012). Whether an appellant is a person aggrieved is generally a question of fact for the district court, but where the facts are undisputed, this court may treat the question as an issue of law. *In re El San Juan Hotel*, 809 F.2d 151, 154 n.3 (1st Cir. 1987).

Standing in a bankruptcy appeal is narrower than Article III standing. *O&S Trucking*, 2016 WL 279269, at *2. "The governing rule—a so-called person aggrieved doctrine—was derived from the Bankruptcy Act of 1898, and it carried over to practice under the modern Bankruptcy Code." *In re Peoples*, 764 F.3d 817, 820 (8th Cir. 2014). "'Person aggrieved' is, of course, a term of art: almost by definition, all appellants may claim in some way to be 'aggrieved,' else they would not bother to prosecute their appeals." *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995). "[I]n bankruptcy proceedings, which typically involve a myriad of parties . . . indirectly affected by every bankruptcy court order . . . , the need to limit collateral appeals is particularly acute." *Id.* (second alteration in original).

"The doctrine limits standing to persons with a financial stake in the bankruptcy court's order, meaning they were directly and adversely affected pecuniarily by the order." *In re Peoples*, 764 F.3d at 820. An appellant is a party aggrieved "if the bankruptcy court order diminishes the person's property, increases the person's burdens, or impairs the person's rights." *In re Marlar*, 267 F.3d 749, 753 n.1 (8th Cir. 2001).

-8-

The Lenders believe that they are persons aggrieved because the substantive consolidation (1) diminished their property by increasing Kelley's potential recovery against them and decreasing the value of their contingent claims, and (2) impaired their rights by precluding potential affirmative defenses in the avoidance actions.

Here, however, any potential pecuniary harm to the Lenders is several steps removed and not a "direct" pecuniary impact. *See In re Peoples*, 764 F.3d at 820. Several steps must occur before the Lenders suffer a pecuniary harm: Kelley must prevail in the avoidance actions, the Lenders must pay the judgment in full, and then they must file a valid proof of claim against the consolidated estate. This possibility of harm does not satisfy the persons aggrieved standard. *See Travelers Ins. Co.*, 45 F.3d at 742 (holding that party was not person aggrieved because they were "at least two steps removed from any possible diminution of its property"); *Rohn & Hass Tex., Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 208 (5th Cir. 1994) (noting that pecuniary impact must be "real *and immediate*" (emphasis added)).

The Lenders emphasize that they are persons aggrieved because the consolidation order impairs their affirmative defenses in the avoidance actions. According to the Lenders, the substantive consolidation order transforms two groups of Lenders into initial transferees of PCI, rather than subsequent transferees. This change, the Lenders say, eliminates good faith affirmative defenses otherwise available in the avoidance actions. *See* **11 U.S.C. § 550(b)(1)** ("The trustee may not recover . . . from a transferee that takes for value . . . , in good faith, and without knowledge of the voidability of the transfer avoided . . . .").

Generally, a bankruptcy court order allowing litigation to proceed against an adversary defendant does not make that defendant a party aggrieved. *See In re LTV Steel Co.*, 560 F.3d 449, 453 (6th Cir. 2009) ("[W]e are aware of no court that has held that the burden of defending a lawsuit, however onerous or unpleasant, is the sort of direct and immediate harm that makes a party 'aggrieved' so as to confer standing in a bankruptcy appeal."). This is true even if, as here, litigation has already begun

against the defendant, and the possibility of liability is more than theoretical. *See id.* at 454.

In an analogous case, the Eleventh Circuit held that an adversary defendant is not a person aggrieved, even if the bankruptcy court order strips the defendant of a defense in the adversary proceedings. ***In re Ernie Haire Ford, Inc.***, 764 F.3d 1321, 1327 (11th Cir. 2014). The trustee there filed adversary proceedings against a former creditor, who moved to enjoin the proceedings as untimely under the bankruptcy plan's litigation-bar date. *Id.* at 1324. The trustee then moved to amend the plan to allow the adversary proceedings to go forward. *Id.* The bankruptcy court granted the motion. *Id.* The adversary defendant sought to appeal. *Id.*

The Eleventh Circuit held that the adversary defendant was not a person aggrieved by the bankruptcy court's order. The court held that an order that subjects a party to the risks of litigation causes only *indirect* harm to that party. *Id.* at 1326. Further, even if a bankruptcy court order deprived a party of "a defense that would have otherwise been available to him," it did not render the defendant a party aggrieved. *Id.* at 1326-27.

Here, as in *Ernie Haire*, the bankruptcy court's order arguably strips the Lenders of certain defenses in their avoidance actions. The Lenders attempt to distinguish *Ernie Haire* by asserting that, unlike their Code-based affirmative defense, the defense in *Ernie Haire* was created by the bankruptcy plan, not the Bankruptcy Code itself. As the dissent notes, the *Ernie Haire* court considered that distinction: "Even if we considered [the defendant's] interest in avoiding litigation by enjoining a lawsuit as different from his interest in avoiding liability, we would not deem [the defendant] a person aggrieved because his interest is not protected by the Bankruptcy Code." *Id.* at 1327; *see also id.* at 1327 n.4 ("[W]e are not saying that an adversary defendant can never be a person aggrieved. An adversary defendant may satisfy our standard if his appeal attempts to defend an interest that is protected by the Bankruptcy Code."). These quotations from *Ernie Haire*, however, are not the

-10-

ultimate holding, but rather facts that "only serve[d] to highlight that [the adversary defendant] is not a person aggrieved." *Id.* at 1327.

The court in *Ernie Haire* did not hold that a defendant with a potential Code-based defense is automatically a person aggrieved with standing to appeal from a bankruptcy court order. Here, the Lenders' citation of a Bankruptcy Code provision whose application may be altered by the bankruptcy court's order does not change the fact that the Lenders' interest in avoiding liability is antithetical to the primary purposes of the Bankruptcy Code. *See* **In re LTV Steel Co.**, 560 F.3d at 454 (stating that the interest in avoiding liability to the estate "is diametrically opposed to the primary goal of . . . the Bankruptcy Code in general, which is to minimize the injury to creditors" (alteration in original)). Moreover, even if the Lenders' interests are arguably protected by the Bankruptcy Code, the harm they suffered remains indirect. *See* **Ernie Haire**, 764 F.3d at 1326 ("Allowing appeals from parties who have suffered only an indirect harm *or* who hold interests outside the scope of the Bankruptcy Code would defeat the very purpose underlying our person aggrieved standard.").

The principles underlying the persons aggrieved doctrine support the district court's conclusion that the Lenders are not persons aggrieved. The doctrine is designed "to prevent bankruptcies from being needlessly prolonged by parties whose interests are not central to the process." *Id.* at 1327; *see also* **In re First Cincinnati, Inc.**, 286 B.R. 49, 51 (B.A.P. 6th Cir. 2002) (noting that doctrine is intended "to prevent marginally interested parties from litigating satellite issues up and down the appellant chain while the bankruptcy case stalls out and neither creditors nor debtors receive their relief intended by the Code."). The Lenders' interests here are not central to the bankruptcy process, and allowing them to appeal the bankruptcy court's order "would completely undermine the rationale behind [the] standard and bring bankruptcy proceedings to a grinding halt." **Ernie Haire**, 764 F.3d at 1327. The district court did not err in dismissing the Lenders under the persons aggrieved doctrine.

\* \* \* \* \* \* \*

The judgment is affirmed.

BYE, Circuit Judge, dissenting.

I respectfully dissent from Part IV of the majority opinion because I believe the Lenders' arguable loss of their Code-based defenses to the Trustee's avoidance action makes them "persons aggrieved" by the bankruptcy court's substantive consolidation order. I therefore believe they have standing to appeal.

A few additional facts are necessary to explain the impact of the substantive consolidation order on Epsilon/Westford (Epsilon) and Opportunity Finance, LLC (Opportunity Finance).[2] During the Tom Petters Ponzi scheme, Petters Company, Inc. (PCI) purported to buy electronics and resell them to other companies at a markup. Petters formed Special Purpose Entities (SPEs) as vehicles to collect the loans that fueled this business. Companies would lend money to the SPEs secured by the "collateral" – illusory accounts receivable – the SPEs owned. The SPEs then funneled the money upward through PCI, which was a central repository for all the transactions. The money that traveled through the SPEs represented the majority of funds in the Ponzi scheme, roughly $30 billion over the seven-year scheme.

Each SPE had only a single creditor. Thus, Epsilon was the sole creditor of the SPE called PL Ltd., Inc., and Opportunity Finance was the sole creditor of two separate SPEs: PC Funding, LLC, and SPF Funding, LLC. This corporate structure has played a significant role in the Petters bankruptcy proceedings.

---

[2]DZ Bank AG was a senior lender to Opportunity Finance from 2001 to 2003 for a series of loans, and its interest is therefore consistent with Opportunity Finance's interest. For simplicity, I refer to them collectively as "Opportunity Finance."

After the Ponzi scheme unraveled, PCI and each of the eight SPEs filed for bankruptcy separately, so the Petters bankruptcy proceedings, collectively, began as nine separate bankruptcy proceedings. Since Opportunity Finance and Epsilon were net winners in the Ponzi scheme, Chapter Eleven Trustee Douglas Kelley (the Trustee) filed an avoidance action on behalf of the estates of the SPEs against them, seeking to recover money that the Trustee alleged had been wrongfully transferred from the SPEs to Opportunity Finance and Epsilon – the "winnings" from the Ponzi scheme. These transactions totaled over $2.2 billion to Opportunity Finance and $3.2 billion to Epsilon.

The structure of the bankruptcy proceedings gave Opportunity Finance and Epsilon the ability to assert two potentially significant defenses to the avoidance action. First, a trustee may only use its avoidance power on behalf of a creditor of the debtor. See 11 U.S.C. § 544(b). But because Epsilon was the sole creditor in the bankruptcy proceeding of its SPE (PL Ltd., Inc.), and it filed no claims against the estate, it argued the Trustee was not using its power on behalf of a creditor of the debtor because there were no creditors in the PL Ltd., Inc.'s bankruptcy proceeding. Epsilon therefore argued the Trustee lacked standing to avoid the transactions from PL, Ltd., Inc., to Epsilon. Opportunity Finance made the same arguments in the avoidance action, because it was the sole creditor of each of its SPEs and it had filed no claims against either estate.

Second, to the extent that the Trustee made avoidance claims against Opportunity Finance and Epsilon on behalf of the PCI estate, the fact that the transfers went from PCI through the SPEs before they reached Opportunity Finance and Epsilon made them subsequent transferees of PCI. Opportunity Finance's and Epsilon's status as subsequent transferees allowed them to assert a good faith defense to the avoidance that they might not have been able to assert if they were initial transferees of the PCI estate – i.e., if PCI had transferred money directly to Opportunity Finance or Epsilon. Compare, e.g., 11 U.S.C. § 550(a)(1) (providing that a trustee may recover from the initial transferee without further showing), with 11

U.S.C. § 550(b)(1) (providing that a trustee may not recover from a subsequent transferee that "takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided").

In short, the corporate structure of the Ponzi scheme – and, derivatively, the structure of the bankruptcy proceedings – gave Opportunity Finance and Epsilon two significant defenses to potentially escape billions of dollars of liability in the Trustee's avoidance actions.

But that was before substantive consolidation. The substantive consolidation order dissolved the corporate structure of the Ponzi scheme and combined all nine bankruptcy proceedings into one bankruptcy proceeding with one bankruptcy estate. Now, there are no SPEs separating Opportunity Finance and Epsilon from PCI. As a result, they have arguably lost their two defenses to the avoidance action: (1) they can no longer argue the Trustee lacks standing to pursue the avoidance action because there are dozens of creditors of PCI on whose behalf the Trustee may act; and (2) they can no longer defend the avoidance action on the grounds they acted in good faith as subsequent transferees, because without the SPEs as intermediaries between them and PCI, they are now initial transferees of PCI.

I believe the effect of this substantive consolidation order makes Opportunity Finance and Epsilon persons aggrieved with standing to appeal the order. A party is considered a person aggrieved when the bankruptcy court order impairs the party's rights. In re Marlar, 267 F.3d 749, 753 n.1 (8th Cir. 2001). Prior to the substantive consolidation order, the Bankruptcy Code gave Opportunity Finance and Epsilon the right to defend the avoidance action on the grounds that the Trustee lacked standing and that they were good faith subsequent transferees. The substantive consolidation order stripped these defenses. Because this order impaired Opportunity Finance's and Epsilon's rights, I believe they are "persons aggrieved" by the substantive consolidation order.

-14-

The majority disagrees. It reasons an order that strips a party's defenses is analogous to an order that allows litigation to proceed against an adversary defendant. And since an order that merely allows litigation to proceed against an adversary defendant does not make the defendant a person aggrieved, an order that strips a party's defenses does not make the party a person aggrieved either.

To reach this conclusion, the majority relies on In re Ernie Haire Ford, Inc., 764 F.3d 1321, 1325 (11th Cir. 2014) cert. denied sub nom. Atkinson v. Ernie Haire Ford, Inc., 136 S. Ct. 104 (2015). In Ernie Haire, a bankruptcy court empowered a liquidating agent to sue third parties that allegedly owed money to the estate as long as the litigation began by a certain date, the litigation bar date. 764 F.3d at 1324. After the litigation bar date passed, the bankruptcy court, at the request of the liquidating agent, entered an order modifying the litigation bar date so the liquidating agent could sue an additional defendant. Id. The defendant attempted to appeal the order, but the Eleventh Circuit held the defendant was not a person aggrieved with standing to appeal. Id. at 1325-26. The court's reasoning was twofold. First, "[o]rders allowing litigation to go forward do not burden a party's ability to defend against liability; they simply require parties to exercise that ability." Id. at 1326. Second, the court reasoned that for a party to be aggrieved, its interest "must be one that is protected or regulated by the Bankruptcy Code," and because the defendant's "sole interest [was] that of an adversary defendant in avoiding liability," his interest was "antithetical to the goals of bankruptcy." Id. at 1326-27.

But neither basis for the Eleventh Circuit's conclusion is present where, as here, an order strips a party of Bankruptcy Code-based defenses. First, an order that strips a party's defenses goes a step beyond an order that merely allows litigation to go forward, because it requires a party to defend a lawsuit *and* it hobbles its defense. This additional step is significant because it changes the odds of the litigation. While an order that allows litigation to proceed against a party may force the party to assert its defenses, the order does not change the probability that the party will win the lawsuit because the party still retains all of its defenses. Since the order does not

-15-

change the party's legal position, it does not "impair" the rights of the party such that the party has standing to appeal. See Ernie Haire, 764 F.3d at 1325-26; see also In re LTV Steel Co., 560 F.3d 449, 453 (6th Cir. 2009) ("[W]e are aware of no court that has held that the burden of *defending a lawsuit*, however onerous or unpleasant, is the sort of direct and immediate harm that makes a party 'aggrieved' so as to confer standing in a bankruptcy appeal.") (emphasis added); Travelers Ins. v. H.K. Porter Co., 45 F.3d 737, 743 (3d Cir. 1995) ("[A]n order which simply allows a lawsuit to go forward does not necessarily 'aggrieve' the potential defendant for purposes of appellate standing.").

But a defense-stripping order does impair the party's rights, because it changes the probability that the party will win the lawsuit. By removing the party's defenses, the order imposes an additional legal burden on the party's "ability to defend against liability," Ernie Haire, 764 F.3d at 1326, and this additional legal burden distinguishes a defense-stripping order from an order that merely allows litigation to proceed.

This case illustrates the distinction. Opportunity Finance and Epsilon would have had to defend the Trustee's avoidance action whether the bankruptcy court substantively consolidated the estate or not, so the substantive consolidation order was not an order that "simply allow[ed] a lawsuit to go forward." Travelers Ins. Co., 45 F.3d at 743. The effect of the order, rather, is that it takes away two of Opportunity Finance's and Epsilon's defenses and makes it harder for them to defend the lawsuits. Simply put, it is now less likely they will prevail in the avoidance action because of the substantive consolidation order. Thus, the substantive consolidation order impairs Opportunity Finance's and Epsilon's legal rights and gives them standing to appeal.

Second, because the defenses Opportunity Finance and Epsilon could lose are defenses the Bankruptcy Code gives them, their interests are not "antithetical to the goals of bankruptcy." Ernie Haire, 764 F.3d at 1326-27. The majority discounts Opportunity Finance's and Epsilon's citation of the Code-based defenses they stand to lose, reasoning that these lost defenses do "not change the fact that the Lenders'

interest in avoiding liability is antithetical to the primary purposes of the Bankruptcy Code." But the question is not whether the harmed interests are consistent with the "primary purpose" of the Code. It is whether the harmed interests are "interests the Bankruptcy Code seeks to protect or regulate." Id. at 1326. While it is true that the Code's primary interest is minimizing the injury to creditors, this is not its singular interest. The Code is also interested in protecting subsequent transferees from having their transactions avoided if they acted in good faith, see 11 U.S.C. § 550(b)(1), and in protecting parties from having their transactions avoided when the trustee is not acting for the benefit of a creditor, see 11 U.S.C. § 544.

I therefore disagree with the majority that Opportunity Finance's and Epsilon's citation to the Bankruptcy Code defenses they may lose in substantive consolidation does not make them persons aggrieved. To the contrary, it is precisely the fact that the Code gives them these defenses that shows they are persons aggrieved, because the substantive consolidation order has stripped them of these "interests the Bankruptcy Code seeks to protect." Ernie Haire, 764 F.3d at 1326; see also id. at 1327 n.4 ("Of course, we are not saying that an adversary defendant can never be a person aggrieved. An adversary defendant may satisfy our standard if his appeal attempts to defend an interest that is protected by the Bankruptcy Code.").

Finally, this is not the type of appeal the persons aggrieved doctrine was designed to prevent – an appeal by "marginally interested parties . . . litigating satellite issues up and down the appellate chain while the bankruptcy case stalls out and neither creditors nor debtors receive the relief intended by the Code." Travelers Cas. & Sur. v. Corbin (In re First Cincinnati, Inc.), 286 B.R. 49, 51 (B.A.P. 6th Cir. 2002). The substantive consolidation order fundamentally alters the entire Petters bankruptcy proceeding. It could allow the Trustee to void billions of dollars of transactions and therefore transfer billions of dollars from Opportunity Finance and Epsilon back to the estate. True, the appeal will prolong the bankruptcy. But this is not merely a "satellite issue" and Opportunity Finance and Epsilon are not "marginally interested parties." This is a fundamental reorganization of a bankruptcy proceeding that strips

Opportunity Finance and Epsilon of two significant defenses to a billion-dollar avoidance action. The persons aggrieved doctrine was not designed to prevent appeals of this magnitude.

I believe Opportunity Finance and Epsilon are persons aggrieved by the substantive consolidation order, because the order arguably strips them of two Code-based defenses to the Trustee's avoidance action. Therefore, they have standing to appeal the order. I respectfully dissent.

_____