BYE, Circuit Judge, dissenting.
I respectfully dissent from Part IV of the majority opinion because I believe the Lenders’ arguable loss of their Code-based defenses to the Trustee’s avoidance action makes them “persons aggrieved” by the bankruptcy court’s substantive consolidation order. I therefore believe they have standing to appeal.
A few additional facts are necessary to explain the impact of the substantive consolidation order on Epsilon/Westford (Epsilon) and Opportunity Finance, LLC (Opportunity Finance).[2] During the Tom Petters Ponzi scheme, Petters Company, Inc. (PCI) purported to buy electronics and resell them to other companies at a markup. Petters formed Special Purpose Entities (SPEs) as vehicles to collect the loans that fueled this business. Companies would lend money to the SPEs secured by the “collateral” — illusory accounts receivable — the SPEs owned. The SPEs then funneled the money upward through PCI, which was a central repository for all the transactions. The money that traveled through the SPEs represented the majority of funds in the Ponzi scheme, roughly $30 billion over the seven-year scheme.
Each SPE had only a single creditor. Thus, Epsilon was the sole creditor of the SPE called PL Ltd., Inc., and Opportunity Finance was the sole creditor of two separate SPEs: PC Funding, LLC, and SPF Funding, LLC. This corporate structure has played a significant role in the Petters bankruptcy proceedings.
After the Ponzi scheme unraveled, PCI and each of the eight SPEs filed for bankruptcy separately, so the Petters bankruptcy proceedings, collectively, began as nine separate bankruptcy proceedings. Since Opportunity Finance and Epsilon were net winners in the Ponzi scheme, Chapter Eleven Trustee Douglas Kelley (the Trustee) filed an avoidance action on behalf of the estates of the SPEs against them, seeking to recover money that the Trustee alleged had been wrongfully transferred from the SPEs to Opportunity Finance and Epsilon — the “winnings” from the Ponzi scheme. These transactions totaled over $2.2 billion to Opportunity Finance and $3.2 billion to Epsilon.
The structure of the bankruptcy proceedings gave Opportunity Finance and Epsilon the ability to assert two potentially significant defenses to the avoidance action. First, a trustee may only use its avoidance power on behalf of a creditor of *461 the debtor. See 11 U.S.C. § 544(b). But because Epsilon was the sole creditor in the bankruptcy proceeding of its SPE (PL Ltd., Inc.), and it filed no claims against the estate, it argued the Trustee was not using its power on behalf of a creditor of the debtor because there were no creditors in the PL Ltd., Inc.’s bankruptcy proceeding. Epsilon therefore argued the Trustee lacked standing to avoid the transactions from PL, Ltd., Inc., to Epsilon. Opportunity Finance made the same arguments in the avoidance action, because it was the sole creditor of each of its SPEs and it had filed no claims against either estate.
Second, to the extent that the Trustee made avoidance claims against Opportunity Finance and Epsilon on behalf of the PCI estate, the fact that the transfers went from PCI through the SPEs before they reached Opportunity Finance and Epsilon made them subsequent transferees of PCI. Opportunity Finance’s and Epsilon’s status as subsequent transferees allowed them to assert a good faith defense to the avoidance that they might not have been able to assert if they were initial transferees of the PCI estate — i.e., if PCI had transferred money directly to Opportunity Finance or Epsilon. Compare, e.g., 11 U.S.C. § 550(a)(1) (providing that a trustee may recover from the initial transferee without further showing), with 11 U.S.C. § 550(b)(1) (providing that a trustee may not recover from a subsequent transferee that “takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided”).
In short, the corporate structure of the Ponzi scheme — and, derivatively, the structure of the bankruptcy proceedings— gave Opportunity Finance and Epsilon two significant defenses to potentially escape billions of dollars of liability in the Trustee’s avoidance actions.
But that was before substantive consolidation. The substantive consolidation order dissolved the corporate structure of the Ponzi scheme and combined all nine bankruptcy proceedings into one bankruptcy proceeding -with one bankruptcy estate. Now, there are no SPEs separating Opportunity Finance and Epsilon from PCI. As a result, they have arguably lost their two defenses to the avoidance action: (1) they can no longer argue the Trustee lacks standing to pursue the avoidance action because there are dozens of creditors of PCI on whose behalf the Trustee may act; and (2) they can no longer defend the avoidance action on the grounds they acted in good faith as subsequent transferees, because without the SPEs as intermediaries between them and PCI, they are now initial transferees of PCI.
I believe the effect of this substantive consolidation order makes Opportunity Finance and Epsilon persons aggrieved with standing to appeal the order. A party is considered a person aggrieved when the bankruptcy court order impairs the party’s rights. In re Marlar, 267 F.3d 749, 753 n. 1 (8th Cir.2001). Prior to the substantive consolidation order, the Bankruptcy Code gave Opportunity Finance and Epsilon the right to defend the avoidance action on the grounds that the Trustee lacked standing and that they were good faith subsequent transferees. The substantive consolidation order stripped these defenses. Because this order impaired Opportunity Finance’s and Epsilon’s rights, I believe they are “persons aggrieved” by the substantive consolidation order.
The majority disagrees. It reasons an order that strips a party’s defenses is analogous to an order that allows litigation to proceed against an adversary defendant. And since an order that merely allows litigation to proceed against an adversary defendant does not make the defendant a *462 person aggrieved, an order that strips a party’s defenses does not make the party a person aggrieved either.
To reach this conclusion, the majority relies on In re Ernie Haire Ford, Inc., 764 F.3d 1321, 1325 (11th Cir.2014) cert. denied sub nom. Atkinson v. Ernie Haire Ford, Inc., - U.S.-, 136 S.Ct. 104, 193 L.Ed.2d 36 (2015). In Ernie Haire, a bankruptcy court empowered a liquidating agent to sue third parties that allegedly owed money to the estate as long as the litigation began by a certain date, the litigation bar date. 764 F.3d at 1324. After the litigation bar date passed, the bankruptcy court, at the request of the liquidating agent, entered an order modifying the litigation bar date so the liquidating agent could sue an additional defendant. Id. The defendant attempted to appeal the order, but the Eleventh Circuit held the defendant was not a person aggrieved with standing to appeal. Id. at 1325-26. The court’s reasoning was twofold. First, “[o]rders allowing litigation to go forward do not burden a party’s ability to defend against liability; they simply require parties to exercise that ability.” Id. at 1326. Second, the court reasoned that for a party to be aggrieved, its interest “must be one that is protected or regulated by the Bankruptcy Code,” and because the defendant’s “sole interest [was] that of an adversary defendant in avoiding liability,” his interest was “antithetical to the goals of bankruptcy.” Mat 1326-27.
But neither basis for the Eleventh Circuit’s conclusion is present where, as here, an order strips a party of Bankruptcy Code-based defenses. First, an order that strips a party’s defenses goes a step beyond an order that merely allows litigation to go forward, because it requires a party to defend a lawsuit and it hobbles its defense. This additional step is significant because it changes the odds of the litigation. While an order that allows litigation to proceed against a party may force the party to assert its defenses, the order does not change the probability that the party will win the lawsuit because the party still retains all of its defenses. Since the order does not change the party’s legal position, it does not “impair” the rights of the party such that the party has standing to appeal. See Ernie Haire, 764 F.3d at 1325-26; see also In re LTV Steel Co., 560 F.3d 449, 453 (6th Cir.2009) (“[W]e are aware of no court that has held that the burden of defending a lawsuit, however onerous or unpleasant, is the sort of direct and immediate harm that makes a party ‘aggrieved’ so as to confer standing in a bankruptcy appeal.”) (emphasis added); Travelers Ins. v. H.K. Porter Co., 45 F.3d 737, 743 (3d Cir.1995) (“[A]n order which simply allows a lawsuit to go forward does not necessarily ‘aggrieve’ the potential defendant for purposes of appellate standing.”).
But a defense-stripping order does impair the party’s rights, because it changes the probability that the party will win the lawsuit. By removing the party’s defenses, the order imposes an additional legal burden on the party’s “ability to defend against liability,” Ernie Haire, 764 F.3d at 1326, and this additional legal burden distinguishes a defense-stripping order from an order that merely allows litigation to proceed.
This case illustrates the distinction. Opportunity Finance and Epsilon would have had to defend the Trustee’s avoidance action whether the bankruptcy court substantively consolidated the estate or not, so the substantive consolidation order was not an order that “simply allow[ed] a lawsuit to go forward.” Travelers Ins. Co., 45 F.3d at 743. The effect of the order, rather, is that it takes away two of Opportunity Finance’s and Epsilon’s defenses and makes it harder for them to defend *463 the lawsuits. Simply put, it is now less likely they will prevail in the avoidance action because of the substantive consolidation order. Thus, the substantive consolidation order impairs Opportunity Finance’s and Epsilon’s legal rights and gives them standing to appeal.
Second, because the defenses Opportunity Finance and Epsilon could lose are defenses the Bankruptcy Code gives them, their interests are not “antithetical to the goals of bankruptcy.” Ernie Haire, 764 F.3d at 1326-27. The majority discounts Opportunity Finance’s and Epsilon’s citation of the Code-based defenses they stand to lose, reasoning that these lost defenses do “not change the fact that the Lenders’ interest in avoiding liability is antithetical to the primary purposes of the Bankruptcy Code.” But the question is not whether the harmed interests are consistent with the “primary purpose” of the Code. It is whether the harmed interests are “interests the Bankruptcy Code seeks to protect or regulate.” Id. at 1326. While it is true that the Code’s primary interest is minimizing the injury to creditors, this is not its singular interest. The Code is also interested in protecting subsequent transferees from having their transactions avoided if they acted in good faith, see 11 U.S.C. § 550(b)(1), and in protecting parties from having their transactions avoided when the trustee is not acting for the benefit of a creditor, see 11 U.S.C. § 544.
I therefore disagree with the majority that Opportunity Finance’s and Epsilon’s citation to the Bankruptcy Code defenses they may lose in substantive consolidation does not make them persons aggrieved. To the contrary, it is precisely the fact that the Code gives them these defenses that shows they are persons aggrieved, because the substantive consolidation order has stripped them of these “interests the Bankruptcy Code seeks to protect.” Ernie Haire, 764 F.3d at 1326; see also id. at 1327 n. 4 (“Of course, we are not saying that an adversary defendant can never be a person aggrieved. An adversary defendant may satisfy our standard if his appeal attempts to defend an interest that is protected by the Bankruptcy Code.”).
Finally, this is not the type of appeal the persons aggrieved doctrine was designed to prevent — an appeal by “marginally interested parties ... litigating satellite issues up and down the appellate chain while the bankruptcy case stalls out and neither creditors nor debtors receive the relief intended by the Code.” Travelers Cas. & Sur. v. Corbin (In re First Cincinnati, Inc.), 286 B.R. 49, 51 (6th Cir. BAP 2002). The substantive consolidation order fundamentally alters the entire Pet-ters bankruptcy proceeding. It could allow the Trustee to void billions of dollars of transactions and therefore transfer billions of dollars from Opportunity Finance and Epsilon back to the estate. True, the appeal will prolong the bankruptcy. But this is not merely a “satellite issue” and Opportunity Finance and Epsilon are not .“marginally interested parties.” This is a fundamental reorganization of a bankruptcy proceeding that strips Opportunity Finance and Epsilon of two significant defenses to a billion-dollar avoidance action. The persons aggrieved doctrine was not designed to prevent appeals of this magnitude.
I believe Opportunity Finance and Epsilon are persons aggrieved by the substantive consolidation order, because the order arguably strips them of two Code-based defenses to the Trustee’s avoidance action. Therefore, they have standing to appeal the order. I respectfully dissent.

. DZ Bank AG was a senior lender to Opportunity Finance from 2001 to 2003 for a series of loans, and its interest is therefore consistent with Opportunity Finance’s interest. For simplicity, I refer to them collectively as “Opportunity Finance.”